IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNIKA T., a Minor, By and Through Her Parents, JOHN T. and SIMONE T., | : | CIVIL ACTION |
| | : | |
| AND | : | |
| | : | |
| JOHN T. AND SIMONE T, Adults, Individually, and On Their Own Behalf, All of West Chester, PA, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| UNIONVILLE CHADDS-FORD SCHOOL DISTRICT, 740 Unionville Rd., Kennett Square, PA 19348-1531, | : | NO. |
| | : | |
| Defendant. | : | JURY TRIAL DEMANDED |

## COMPLAINT

## I.  Preliminary Statement

1.     This action is brought by Annika T., a minor child with a nonverbal learning

disability, and her parents, John T. and Simone T. (collectively referred to as "Plaintiffs") due to:

1) the failure of the Unionville Chadds-Ford School District ("District") or ("Defendant") to

provide a free appropriate public education ("FAPE") to Annika as required by the Individuals

with Disabilities Education Act ("the IDEA"), 42 U.S.C. Section 1401 *et seq.*[1] and Section 504

of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. Section 794; and 2) the District's

---

[1] Effective July 1, 2005, IDEA-1997 was amended at 20 U.S.C. Section 601 et seq. and entitled Individuals with Disabilities Education Improvement Act of 2004 ("IDEA-2004").

discrimination against Annika on the basis of her disability by failing to provide equal educational access and opportunities to obtain meaningful educational benefit in violation of Section 504 and the Americans with Disabilities Act of 1990, 42 U.S.C.A. Section 12101 ("ADA").

2.    On December 5, 2007, the Plaintiffs requested a special education due process hearing pursuant to 34 C.F.R. Sections 300.507(a) and 300.508 and 22 Pa Code Chapter 14.162. The due process hearing was brought pursuant to both IDEA and Section 504.

3.    At the hearing, Plaintiffs sought compensatory education beginning in April 2005 for the District's failure to timely evaluate and identify Annika as in need of special education services, as well as its subsequent failure to provide her with an appropriate Individualized Education Program ("IEP") which offered her with FAPE.

4.    The Special Education Hearing Officer – in a decision containing almost no analysis, let alone meaningful analysis – erroneously concluded that the two year time limitation contained in IDEA-2004 applied retroactively to limit Plaintiffs' claims prior to December 7, 2005.

5.    By written decision dated June 14, 2008, the Hearing Officer also denied Plaintiffs' other claims for relief; a Pennsylvania Special Education Appeals Panel, after a scant and wholly insufficient review, summarily affirmed this incorrect decision.[2]

6.    Since the Hearing Officer and Appeals Panel decisions were issued, Judge Yohn issued a decision in Terance D. v. Sch. Dist. of Philadelphia, — F.Supp.2d —, 2008 WL

---

[2] Pennsylvania disbanded the special education appeals panels pursuant to its new regulations to IDEA found at 22 Pa. Code Chapter 14, effective July 1, 2008.

3154730, at *5 (E. D. Pa. Aug. 5, 2008) holding that IDEA's statute of limitations may not be applied retroactively to limit claims arising prior to the Act's July 1, 2005 effective date, even where the parents requested a due process hearing after the effective date of IDEA-2004. Accordingly, Plaintiffs seek an immediate remand to a Special Education Hearing Officer for consideration of their claims prior to December 7, 2005 without imposition of a statute of limitations, and intend to file a Motion to this end forthwith.

7.    Plaintiffs therefore bring this action requesting review and reversal of the Hearing Officer and Appeals Panel decisions regarding their application of a statute of limitations and on the merits of Plaintiffs' remaining claims, as well as a preliminary remand to a Pennsylvania Special Education Hearing Officer for consideration of Plaintiffs' compensatory education claims prior to December 7, 2005 without imposition of a statute of limitations pursuant to Tereance D. Plaintiffs also seek compensatory damages as well as reasonable attorneys fees and costs under the IDEA, Section 504 and the ADA.

## II.    Parties

8.    Annika is an eleven year-old child who has been determined by the District to be eligible for special education services under the IDEA as a child with a Specific Learning Disability.  Annika has resided within the boundaries of the District at all times relevant to this Complaint.

9.     John T. and Simone T.  are Annika's parents and have resided with her at 1058 Ballintree Lane, West Chester, PA 19380 within the boundaries of the Unionville Chadds-Ford School District at all times relevant to this Complaint.

10. The Unionville Chadds-Ford School District, located at 740 Unionville Rd., Kennett Square, PA 19348-1531 is the recipient of several sources of federal funds and is an educational agency designated by Pennsylvania law and the Pennsylvania Department of Education for the provision of educational services to individuals residing within its boundaries; such services include those which are mandated under IDEA and Section 504 as well as Pennsylvania's statutory/regulatory scheme concerning young children with disabilities. 11 P.S. Section 875-101; 22 Pa. Code Section 14.131 to 14.133; see also, e.g., 24 P.S. Chapter 13; and 22 Pa. Code Chapters 14 and 15.

## III. Jurisdiction and Venue

11. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. Sections 1331 and 1343, as this case raises federal questions under the IDEA, Section 504 and the ADA.

12. Plaintiffs have exhausted their administrative remedies where required under 20 U.S.C. Section 1415(i), having pursued a due process hearing and having filed a timely appeal to the Pennsylvania Special Education Appeals Panel.

13. The Plaintiffs' claims and remedies are authorized by 20 U.S.C. Section 1415; 29 U.S.C. Section 794(a); 42 U.S.C. Section 12101; and 28 U.S.C. Sections 2201 and 2202, providing for declaratory and any further relief deemed necessary and proper.

14. All of the District's actions complained of herein have taken place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania. Venue is appropriate in this District pursuant to 28 U.S.C. Section 1391.

## IV. Additional Facts Leading to Liability

4

15.    Annika began attending the District in the 2004-2005 school year for her first grade year after attending kindergarten for two years.  During the 2004-2005 school year, Annika struggled significantly both academically and emotionally.  The School District instituted an Instructional Support Team ("IST") for Annika due to the substantial problems she was experiencing in first grade which included: reading at 50% below her expected level; requiring an increase in her pull-out reading support program from three times a cycle to four, as she was not making progress in reading; and visiting the nurse more than 86 times in one year due to her frequently becoming upset and crying.

16.    The District's school psychologist, who participated in Annika's first IST meeting, recalled that Annika was experiencing a slow rate of academic progress; had difficulty focusing on instruction and following directions; and experienced difficulty persevering with tasks. Indeed, Annika's IST teacher testified Annika was still considered "at- risk" by the end of first grade.

17.    The District failed to refer Annika for an evaluation despite these serious issues and her lack of progress with IST.  Instead, the District continued to provide IST during the 2005-2006 school year.  Not surprisingly, Annika continued to struggle during her second grade year as evidenced by the following: continued frequent visits to the nurse in an attempt to evade work that was difficult for her; high distractibility and behaviors that impeded her learning; and performing significantly below expected levels in both Math and Reading.

18.    By the end of the first marking period of the 2005-2006 school year, Annika's teacher had concerns about her academic abilities.   In addition, Annika required one-to-one assistance on a daily basis which caused Annika's teacher to be even more concerned.  Due to

Annika's lack of progress during second grade, her teacher conducted a variety of assessments, including the Test of Word Reading Efficiency (TOWRE) which established Annika's word reading efficiency was below average and her sight word reading score was in only the 8th percentile. Additionally, the teacher had Annika complete the Qualified Reading Inventory-3 (QRI-3) which indicated that Annika's frustrational level in reading was at a first to second grade level.

19.    At her parents' initiation, Annika was finally referred for a Multidisciplinary Evaluation (MDE) in the 2005-2006 school year.  The District's ER, dated March 13, 2006, concluded she had needs in basic reading skills, reading comprehension, spelling, written expression, math computation, coping skills, independence and task competition. Although it is not a disability category listed in the IDEA, the ER diagnosed her with a nonverbal learning disability.  The school psychologist admitted that psychological processes underlying Annika's learning disability were most likely present at a very early age, and in first grade.

20.    As a result of the District's failure to timely evaluate Annika, despite having more than a reasonable suspicion that she was a child with a disability in need of specially designed instruction, the District failed to offer any special education program and placement until April 4, 2006.

21.    The District's IEPs – which, as the administrative process observed, were basically the same IEP offered again and again --  provided minimal information as to Annika's present educational levels or performance. Moreover, despite the clear indication that Annika had behaviors that impeded her learning, the present educational levels provided no appropriate baselines or information regarding her behaviors. The District's own school psychologist testified

6

that in reviewing several of Annika's goals she could not determine Annika's baseline levels. Thus, the IEPs contained no baseline levels necessary to create measurable goals.

22.     Annika's IEPs contained vague goals which were difficult, if not impossible, to measure. As such, the goals in her IEPs were deficient in evaluating all of her needs and inappropriate to evaluate her progress. Additionally, the District's own witness established that Annika actually failed to achieve her IEP goals.

23.     The specially designed instruction in Annika's IEPs was vague and provided only general, rather than the required individualized, accommodations. Likewise, the IEPs did not require research-based instruction in Reading, Writing, and Math, despite the clear mandate of IDEA-2004. Annika's IEP included minimal related services and failed to include critical related services such as psychological services or counseling.

24.     A student is entitled to extended school year (ESY) services if she is likely to regress or to fail to meet IEP goals without a summer education program. 22 Pa. Code Section 14.132; Johnson v. Independent Sch. Dist. No. 4, 921 F.2d 1022 (10th Cir. 1990); Alamo Heights Ind. Sch. Dist. v. State Bd. of Educ., 790 F.2d 1163 (5th Cir.1986); Central Bucks Sch. Dist. v. Sara K., 34 IDELR 235 (Pa.Cmwlth. 2000). Annika's IEPs failed to provide for appropriate ESY despite her continued disabilities.

25.     Annika has behavioral needs that impeded her learning. Specifically her IEPs noted she was restless, impulsive, gave up easily, had difficulty sustaining attention, needed frequent breaks, and engaged in avoidance behaviors. Despite these clear indications of significant social and emotional issues in the ER and the IEPs, the District's IEPs provided no meaningful intervention in these areas, including a behavior management plan based on a

functional behavior assessment. In fact, the District admitted that Annika's behavior support plan consisted of nothing more than instruction in the Learning Support classroom.

26.     The Hearing Officer erroneously failed to award Annika compensatory education for the District's failure to provide her a FAPE. Because Annika's disabilities in the areas of academic, social/emotional, and behavioral functioning are pervasive and were not adequately addressed, her functioning was affected throughout the day.  Thus, the compensatory education award should have included full days of compensatory education for each school day during the period of deprivation

27.     The Hearing Officer erred in applying the two year time limitations of IDEA-2004 retroactively to limit Plaintiffs' claims prior to December 7, 2005.  Retroactive application of a new statute of limitations is prohibited absent clear congressional intent.  INS v. Enrico St. Cyr, 533 U.S. 289, 316, 121 S. Ct. 2271 (2001); Landgraf v. USI Film Products, 511 U.S. 244, 265 (1994); Bowen v. Georgetown University Hosp., 488 U.S. 204, 208, 109 S. Ct. 468 (1988); Lawrence Township Bd. of Educ. v. New Jersey, 417 F.3d 368, 370 (3d Cir. 2005)("amendments to IDEA have prospective application only"); Warren G. v. Cumberland County School District, 190 F.3d 80, n.3 (3d Cir. 1999); Tereance D. v. Sch. Dist. of Philadelphia, — F.Supp.2d —, 2008 WL 3154730, at *5 (E. D. Pa. Aug. 5, 2008)(IDEA's statute of limitations may not be applied retroactively to limit claims arising prior to the Act's July 1, 2005 effective date, even where the parents requested the due process hearing after the effective date of IDEA-2004); J.M. v. Kingsway Regional Sch. Dist., No. Civ. A. 04-4046, 2005 WL 2000179 (D. N. J. Aug. 18, 2005).

28.     Even if IDEA-2004 should somehow have retroactive application to compensatory education claims which existed prior to July 1, 2005, the language of the Act does

not create the simplistic "two year statute of limitations" applied by the state process. In evaluating the complex limitations period established by IDEA-2004, it is essential to first review the specific language of the statute which is contained in two separate subsections of the new Act. Section 1415(f)(3)(c) requires a parent to request a due process hearing within "two years of the date the parent knew or should have known about the alleged" violation of IDEA-2004. Section 1415(b)(6) then delineates the issues which the hearing itself must address: a "violation that occurred not more than two years before the date the parent or public agency knew or should have known about the alleged" violation of IDEA-2004. Consequently, IDEA-2004's time limits have two components: first, a parent has two years to initiate due process from the time that the parent is aware of the violation; second, the Hearing Officer must then consider and adjudicate all violations which occurred two years before any date that the parent or district knew or should have known of the violation, thus creating a much longer time frame than a simple two years for the hearing officer's consideration of violations of IDEA-2004.

29.    The administrative process incorrectly failed to consider or apply the two broad exceptions to the statute of limitations period under IDEA-2004.

30.    The District's actions and omissions prevented the parents from understanding their rights and from asserting Annika's claims in an earlier proceeding. This resulted in a deprivation of FAPE to Annika.

31.    Moreover, since the District asserted an affirmative defense of a statute of limitations, it was the District which must bear the burden of proving the lawful start date for the limitations period. As such, the Hearing Officer erred in placing the burden on the parents. Schaffer v. Weast, 126 S.Ct. 528 (2005).

9

32.     The Hearing Officer erroneously concluded that the continuing violations doctrine, whereby actions that include ongoing violations are considered timely so long as the final violation falls within the limitations period, is not applicable under IDEA or Section 504.

33.     The Hearing Officer erroneously failed to toll the time limitations through Annika's minority under Section 504 as there is no statute of limitations period included in Section 504. The IDEA-2004 amendments do nothing to alter the time limits for bringing claims under Section 504, which allows minor's claims to be brought well beyond a two-year period. Moreover, historically, Section 504 has clearly borrowed state tort limitations periods, including state minority tolling principles. Blunt v. Lower Merion School District, 559 F.Supp. 2d 548 (E.D. Pa. 2008); Sullivan v. Pittsburgh, 811 F.2d 171 (3d Cir. 1987); Saylor v. Ridge, 11 NDLR 293 (E.D. Pa. 1998); Hickey v. Irving Ind. S.D., 976 F.2d 980 (5th Cir 1992) (minority tolling).

34.     Despite her disabilities, Annika is student who is otherwise qualified to participate in the District's educational programs with appropriate instruction, accommodations and supplemental supports for purposes of the ADA and Section 504.

35.     From April 2005, the District failed to timely evaluate her for special education services and to provide her with appropriate educational and related services, accommodations and supplemental services which she required in order to have access to the District's programs and services and to make appropriate developmental and educational progress equal to that provided to children without disabilities.

36.     The District's failure to timely evaluate and provide a FAPE to Annika and to properly accommodate her disabilities has exacerbated the impact of her disabilities; interfered with her ability to communicate with others and to meaningfully participate with typically

10

developing peers; and deferred her ability to engage and be included in age-appropriate social, educational and vocational programs, opportunities and services to which she would have had access if she had received appropriate related services and accommodations in a timely and effective manner, thus excluding her from the mainstream of her school, her community and her family.

37.     The District, a recipient of federal funds, discriminated against Annika on the basis of her disabilities, and deprived her of her right to equal programs and services in violation of her rights under Section 504 and Title II of the ADA.

38.     Annika was excluded from participation in, denied the benefits of, or subject to discrimination at, her school.

## V.  Statutory and Regulatory Background

39.     The purpose of the IDEA is to ensure that "all children with disabilities have available to them a free and appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. Section 1400 (d)(1)(A).

40.     The IDEA and its regulations establish a comprehensive format by which a child with a disability must be evaluated, his classification must be determined and an appropriate program of special education with "related services" must be developed and implemented.  The program must be developed jointly by school district officials and each disabled child's parents through an IEP.  The IEP must be reasonably calculated to afford the child the opportunity to receive "meaningful educational benefit."  Shore Regional High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 198 (3d Cir. 2004); Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 247 (3d Cir.

1999); <u>Polk v. Central Susquehanna Intermediate Unit 16</u>, 853 F.2d 171, 184 (3d Cir. 1988).  The

rights bestowed upon students and families by the IDEA are enforceable through multi-level

administrative and judicial procedures.  20 U.S.C. Section 1415; 34 C.F.R. Sections 300.507;

300.511- 300.516.

      41.    In <u>Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>, 458 U.S. 176,

206-207 (1982), the Supreme Court declared that in order to meet the statutory requirements of

FAPE under the IDEA, school districts must: 1) conform to the procedural requirements of the

Act; and 2) ensure that the eligible student's IEP is reasonably calculated to yield meaningful

benefit.  The Supreme Court has determined the IEP to be the "primary vehicle" and the

"centerpiece of the statute's education delivery system for disabled children," and to embody the

substantive standard for school districts' obligation to provide FAPE to children with disabilities.

<u>Honig v. Doe</u>, 484 U.S. 305, 311 (1988).  Therefore, when an eligible child with a disability is

denied an appropriate IEP and the special education and related services required, described and

promised therein, the child is denied FAPE.

      42.    The Third Circuit Court of Appeals has also clarified that under the IDEA, a child

with a disability is entitled to a program that is reasonably calculated to confer meaningful

educational benefit that is more than trivial.  <u>Polk</u>, 853 F.2d 171; <u>Oberti v. Board of Educ. of

Borough of Clementon Sch. Dist.</u>, 995 F.2d 1204, 1213 (3d Cir. 1993); <u>Ridgewood,</u> 172 F.3d at

247.  In order to provide meaningful benefit, a child's IEP must be tailored to the unique,

individual needs of the child consistent with the child's potential.  34 C.F.R. Section 300.320(a).

      43.    It is abundantly well settled that "education" extends beyond discrete academic

skills, and includes the social, emotional, and physical progress necessary to move the child

toward meaningful independence and self-sufficiency consistent with the child's cognitive

potential. <u>M.C. v. Central Regional Sch. Dist.</u>, 81 F.3d at 393-394; <u>Polk,</u> 853 F.2d at 181-182;

<u>Kruelle v. New Castle County Sch. Dist.</u>, 642 F.2d 687, 693 (3d Cir. 1981); <u>Armstrong v. Kline</u>,

629 F.2d 269 (3d Cir. 1980); <u>Bucks County Public Sch. v. Department of Educ.</u>, 529 A.2d 1201

(Pa. Cmwlth. 1987); <u>Big Beaver Falls Area Sch. Dist. v. Jackson</u>, 615 A.2d 910 (Pa. Cmwlth.

1992). Therefore, for an IEP to be appropriate, it must offer a child the opportunity to make

progress which is "meaningful" in all relevant domains under IDEA, including behavioral, social

and emotional. <u>M.C.</u>, 81 F.3d at 394; <u>Ridgewood,</u> 172 F.3d at 247.

      44.    Under the IDEA, a school district must complete an evaluation of children

suspected of needing special education services within sixty (60) calendar days of receiving

parental consent for the evaluation, and must have an IEP in place at the beginning of each

school year for every exceptional child in its jurisdiction. 20 U.S.C. Section 1414 (a)(1)(c); 34

C.F.R. Section 300.301(c), 300.323 (a); 22 Pa. Code Section 14.123. The evaluation must

encompass all suspected areas of the child's disability. 20 U.S.C. Section 1414 (b)(3)(B); 34

C.F.R. Section 300.304 (c)(4). It must also be sufficiently comprehensive to identify all of the

child's special education and related services needs, whether or not commonly linked to the

disability category in which the child has been classified. 34 C. F. R. Section 300.304 (c)(6).

After the completion of the Evaluation Report ("ER"), the District must provide the parents with

a copy of the ER no fewer than ten (10) school days prior to the meeting of the IEP team, unless

parents choose to waive this right and proceed to an IEP meeting sooner. 22 Pa. Code Section

14.123 (d).

45.    An IEP must be based upon an appropriate and comprehensive evaluation which identifies the student's complete educational needs.  East Penn Sch. Dist. v. Scott B., 213 F.3d 628 (E.D. Pa. 2000) ("an IEP cannot be appropriate if the evaluation is incomplete.")

46.    The IEP is the cornerstone of the special education program for a student. Honig, 484 U.S. at 311; Ridgewood,  172 F.3d at 247; W.B. v. Matula, 67 F.3d 484, 492 (3d Cir. 1995); Polk, 853 F.2d at 173.  The IDEA requires that every IEP include a statement of the child's present levels of academic achievement and functional performance; a statement of measurable annual goals; a description of how the child's progress toward meeting the annual goals will be measured and when periodic reports on the progress the child is making toward meeting the annual goals will be made; a statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child, or on behalf of the child; a statement of the program modifications or supports for school personnel that will be provided to enable the child to advance appropriately toward attaining the annual goals, to be involved in and make progress in the general education curriculum; and an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class and in activities.  20 U.S.C. Section 1414 (d); 34 C.F.R. Section 300.320.[3]

---

[3] IDEA-1997, which would apply to any pre-July 1, 2005 claims, required that every IEP include: comprehensive educational levels; measurable annual goals; benchmarks or short term objectives relating to the goals; a statement of special education, related services and supplementary aids and services to be provided to the child; and an explanation of the extent to which the child will be educated with non-disabled students.  20 U.S.C. Section 1414(d); 34 C.F.R. Section 300.347.

47.     It is the District's obligation to create an appropriate IEP.  Shore Regional High Sch., 381 F.3d at 199; Carlisle Area Sch. Dist. v. Scott P., 62 F.3d 520, 533 (3d Cir. 1995); Oberti, 995 F.2d at 1219; Furhmann v. East Hanover Bd. of Educ., 993 F.2d 1031, 1035 (3d Cir. 1993).  Even a parent's failure to participate in a meaningful manner in the IEP process will not excuse an inappropriate IEP.  Warren G. v. Cumberland Valley Sch. Dist., 190 F.3d 80 (3d Cir. 1999); Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78 (3d Cir. 1996).

48.     Extended school year services ("ESY") are special education and related services that are provided to a child with a disability beyond the normal school year of the public agency in accordance with the child's IEP at no cost to the parents of the child.  34 C.F.R. Section 300.106; 20 U.S.C. 1412(a)(1).

49.     A school district  must ensure that ESY is available as necessary to provide FAPE. 34 C.F.R. Section 300.106.  A school district may not limit extended school year services to particular categories of disability, or unilaterally limit the type, amount, or duration of those services.  Id.

50.     School districts are required, at each IEP meeting for a student with disabilities, to determine whether the student is eligible for ESY services and if so, make subsequent determinations about the services to be provided.  22 Pa. Code Chapter 14.132.  In considering whether a student is eligible for ESY services, the IEP team must consider the following factors; however, no single factor will be considered determinative:

(i) *Regression*——whether the student reverts to a lower level of functioning as evidenced by a measurable decrease in skills or behaviors which occurs as a result of an interruption in educational programming.

(ii) *Recoupment*——whether the student has the capacity to recover the skills or behavior patterns in which regression occurred to a level demonstrated prior to the interruption of educational programming.

(iii) Whether the student's difficulties with regression and recoupment make it unlikely that the student will maintain the skills and behaviors relevant to IEP goals and objectives.

(iv) The extent to which the student has mastered and consolidated an important skill or behavior at the point when educational programming would be interrupted.

(v) The extent to which a skill or behavior is particularly crucial for the student to meet the IEP goals of self-sufficiency and independence from caretakers.

(vi) The extent to which successive interruptions in educational programming result in a student's withdrawal from the learning process.

(vii) Whether the student's disability is severe, such as autism/pervasive developmental disorder, serious emotional disturbance, severe mental retardation, degenerative impairments with mental involvement and severe multiple disabilities.

Id.

51.    Section 504 and Title II of the ADA provide additional protections for children with disabilities.  The ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  The Third Circuit has held that the ADA "extends the nondiscrimination rule of [Section 504] to services provided by any 'public entity' (without regard to whether the entity is a recipient of federal funds)." Jeremy H. v. Mount Lebanon Sch. Dist, 95 F.3d 272, 279 (3d Cir. 1996). The Jeremy H. court held that "the remedies, procedures, and rights" applicable to Section 504 claims are the same as those under the ADA. Id.; see, also, Tereance D., 548 F.Supp.2d at 169-70 (applying same analysis to claims under ADA as to claims under Section 504); Indiana Area Sch. Dist. v. H.H., 428 F.Supp.2d 361, 363, n.3 (W. D. Pa.

2006) ("[T]he Third Circuit generally has held that the same analysis under § 504 applies in determining whether a defendant's actions violate the ADA.")

52.     Both Section 504 and the ADA prohibit the exclusion of, or discrimination against, handicapped persons in federally funded programs such as public education.  Section 504 and its regulations require the identification of all disabled children and the provision of appropriate educational services.  29 U.S.C. Section 794; 34 C.F.R. Section 104.1 *et seq*.  Failure to provide accommodations and supplemental services constitutes discrimination for purposes of both Section 504 and the ADA.

53.     In order to establish a violation of Section 504, a plaintiff must prove that: (1) she is "disabled" as defined by the Act; (2) she is "otherwise qualified" to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) she was excluded from participation in, denied the benefits of, or subject to discrimination at, the school.  Ridgewood,172 F.3d at 253.  The substantive requirements of Section 504 in the education context are equivalent to the requirements of the IDEA.  James S. v. School Dist. of Philadelphia, 559 F.Supp.2d 600, 620 (E. D. Pa. 2008) (citing Molly L. v. Lower Merion Sch. Dist, 194 F.Supp.2d 422, 426 (E.D.Pa.2002)); see, also, Ridgewood, 172 F.3d at 253 ("[T]here are few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition"); Matula, 67 F.3d at 492-93 (same).

54.     Under Section 504, a "handicapped person" is defined as "any person who has a physical or mental impairment which substantially limits one or more major life activities."  34 C.F.R. Section 104.3.  The term "physical or mental impairment" is defined as "any physical or

psychological disorder such as . . . emotional or mental illness and specific learning disabilities."
Id. The term "major life activities" is defined as "functions such as caring for one's self . . .
learning, and working." Id.

55.    Section 504 provides specific requirements for public school systems to protect all
handicapped students, even those who may not qualify under the categorical listings of IDEA.
Section 504 requires that "a public elementary or secondary education program shall annually
undertake to identify and locate every qualified handicapped person residing in the recipient's
jurisdiction who is not receiving a public education and take appropriate steps to notify
handicapped persons and their parents or guardians of the recipient's duty under this subpart." 34
C.F.R. Section 104.32; Ridgewood, 172 F.3d at 253; Matula, 67 F.3d at 500-501. The District
must identify all children who are suspected of having a disability, and must also ensure that its
evaluations to determine actual eligibility for services occur within a reasonable time after school
officials are notified of a child who is likely to have a disability. Matula, 67 F.3d at 501.23.

56.    Under Section 504, recipients of federal funds are required to "provide a free
appropriate public education to each qualified handicapped person who is in the recipient's
jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. Section
104.33(a). The term "appropriate education" is defined as "the provision of regular or special
education and related aids and services that (i) are designed to meet individual educational needs
of the handicapped persons as adequately as the needs of non-handicapped persons are met and
(ii) are based on adherence to the procedures that satisfy the requirements of Section 104.34,
104.35, and 104.36." 34 C.F.R. Section 104.33(b).

57.    The IDEA and Section 504 provide that a party aggrieved has the right to bring a civil action in federal district court, which conducts an independent review of the administrative record and any additional evidence presented by the parties.  Shore Regional High Sch., 381 F.3d at 198; Scott P., 62 F.3d at 527; Matula, 67 F.3d at 492; Susan N. and David N.  v. Wilson Sch. Dist., 70 F.3d 751, 756-757 (3d Cir. 1995); Delaware County Intermediate Unit v. Martin K., 831 F. Supp. 1206, 1220 (E.D. Pa. 1993).  See, also 20 U.S.C. Section 1415(e)(2).  In addition to compensatory education (among other things), a court may award monetary damages to an aggrieved parent or disabled child who brings a claim under the IDEA, Section 504 and the ADA.  Matula, 67 F.3d at 495 (holding monetary damages available under Section 504, and strongly implying availability of same under IDEA); Jeremy H., 95 F.3d at 279 (compensatory damages available under ADA); Damian J. v. Sch. Dist. of Philadelphia, No. Civ. A. 06-3866, Docket No. 35 (monetary damages available directly under IDEA and Section 504); Brandon V. v. Chichester Sch. Dist. et al., No. Civ. A. 06-4687, 2007 WL 2755722 (E. D. Pa. July 25, 2007) (monetary damages available directly under Section 504); Adam C. v. Northeastern Educational Intermediate Unit, et al., No. Civ. A. 07-0532, 2008 WL 4411849 (M. D. Pa. Sept. 23, 2008)(Slip Copy)(permitting money damages claim to proceed directly under Section 504).  Moreover, Section 504, the ADA and the IDEA permit recovery of reasonable attorneys fees by parents who prevail in an action or proceeding thereunder.  20 U.S.C. Section 1415(i)(2)(3); 34 C.F.R. Sections 300.512, 300.513; 29 U.S.C. Section 794; 42 U.S.C. Section 12205.

58.    A school district's failure to comply with IDEA's procedural requirements can give rise to a denial of FAPE where the procedural violation: 1) impeded the child's right to a FAPE; 2) significantly impeded the parent's opportunity to participate in the decision-making

process regarding the provision of a FAPE to the parent's child; or (3) caused a deprivation of educational benefit.  34 C.F.R. Section 300.513 (a)(1-2).

59.    When a District fails to provide FAPE under both the IDEA and Section 504, it is well-settled that compensatory education is an available remedy for the student.  Lester H. v. Gilhool, 916 F.2d 865 (3d Cir. 1990); Ridgewood, 172 F.3d at 250, n.11; M.C., 81 F.3d at 397.

60.    It is also well-established that compensatory education is an in-kind remedy intended to provide educational services denied to a child by a school district's failure to provide a FAPE.  Lester H., 916 F.2d at 873.  The Pennsylvania administrative process has repeatedly held that an award of compensatory education may be used within the reasonable discretion of the parent, i.e., Daniel's parents should be authorized to choose and access appropriate services from any reasonable educational, habilitative, therapeutic, or recreational program provider.  See Special Education Appeals Panel Decisions Nos. 1563, 1499, 1179, 1122, 1098, 1082, 1070, 1054, 1046, 1042, 1027, 1024, 999, 992, 989, 961, 946, 918, 830, 766, 723, 697 (available at www.odr.pattan.net/dueprocess/AppealsDecisions.)

61.    A compensatory education award should be computed from the time a "district knew or should have known of [the] programmatic deficiency."  Ridgewood, 172 F.3d at 249; M.C., 81 F.3d at 396.  The Third Circuit and the Pennsylvania Commonwealth Court have recognized that compensatory education is available for periods of time when a student has not been provided with an appropriate IEP or where the evidence shows that the District knew or should have known of the student's need for one.  Ridgewood, 172 F.3d at 249-250; M. C., 81 F.3d at 391-392; Big Beaver Falls Area Sch. Dist., 615 A.2d at 915.

20

62.    Once a factfinder has determined that a student has been denied a FAPE, the remedy is automatic, as the student is entitled to full days of compensatory education for each school day that the District failed to offer her an appropriate IEP.  A child's entitlement to compensatory education in an amount equal to the deprivation was established by the Third Circuit in Lester H., a case in which the court granted day for day compensatory education for the school district's failure to provide a free appropriate public education to a student for two and one-half years. Lester H., 916 F.2d 865 (3d Cir. 1990)

63.    The right to full days of compensatory education as a remedy for a denial of FAPE was unequivocally confirmed by Judge Sanchez in Damian J. v. School District of Philadelphia, No. Civ. A. 06-3866, 2008 WL 191176, at *7, n. 16 (E. D. Pa. Jan. 22, 2008)(Slip copy)(citing Keystone Central Sch. Dist. v. E.E., 438 F.Supp.2d 579 (M. D. Pa. July 10, 2006).  In Keystone, the reasoning of which was adopted in Damian J., the court rejected the district's claim that only partial school days of compensatory education should be awarded to remedy the district's denial of FAPE to an eligible student.  The court refused to "place an arduous and near-impossible task upon the administrative bodies to parse out the exact amount of hours [the student] was not benefitted by the inappropriate IEP."  Id. at 536.  The court also held, as have many Pennsylvania appeals panels[4], that the student's parent should determine the nature and scope of compensatory education without the need to "incorporate the District in the implementation and use of the compensatory education award [as] it is illogical to force the student to receive compensatory education through the District, which is the entity that failed to provide him with FAPE in the first place."  Id.

---

[4]See, Special Education Appeals Panel Decisions Nos. 1563, 1499, 1179, 1122, 1098, 1082, 1070, 1054, 1046, 1042, 1027, 1024, 999, 992, 989, 961, 946, 918, 830, 766, 723, 697.

**WHEREFORE**,  the Plaintiffs respectfully request that this Court:

1.  Assume jurisdiction over this action;

2.  Reverse the administrative orders of the Hearing Officer and Appeals Panel;

3.  Consider the administrative record below, and hear additional evidence as necessary to make an accurate, independent decision on the merits;

4.  Declare the Defendant's actions and omissions to be violative of IDEA, Section 504, the ADA and Pennsylvania law;

5.  Remand this matter to a Pennsylvania Special Education Hearing Officer for consideration of Plaintiffs claims prior to December 7, 2005 without imposition of a statute of limitations;

6.  Order full days of appropriate compensatory education relief for Annika for each school day, including summers, beginning in April, 2005;

7.  Order appropriate monetary relief for the Defendant's violations of IDEA, Section 504 and the ADA;

8.  Order the Defendant to pay Plaintiffs their reasonable attorneys' fees and related costs; and

9.  Grant such other relief as this Court deems proper.

Respectfully submitted,


/s/_____
Gabrielle C. Sereni, Esquire
ID # 83899



/s/ dm1143_____
Dennis C. McAndrews, Esquire
ID # 28012



/s/_____
Heidi Konkler-Goldsmith, Esquire
ID# 84692

MCANDREWS LAW OFFICES
Attorneys for Plaintiffs
30 Cassatt Avenue
Berwyn, PA 19312
(610) 648-9300 (phone)
(610) 648-0433 (fax)