```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANNIKA T, a minor, by and        :      CIVIL ACTION
through her parents,             :
JOHN T. and SIMONE T., et al.    :
                                 :
         v.                      :
                                 :
UNIONVILLE CHADDS-FORD           :
SCHOOL DISTRICT                  :      NO. 08-4944
```

MEMORANDUM

Bartle, C.J.                                          March 24, 2009

Annika T., a minor child with a "nonverbal" learning disability, brings this action, along with her parents John T. and Simone T., pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA"), § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("§ 504") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101. Plaintiffs allege the defendant, Unionville Chadds-Ford School District (the "School District") failed to provide Annika T. with a free appropriate public education ("FAPE") as required by the IDEA and discriminated against her on the basis of her disability by failing to provide her with equal educational access and opportunities to obtain a meaningful educational benefit in violation of § 504 of the Rehabilitation Act and the Americans with Disabilities Act. Before the court is the motion of the School District to dismiss the plaintiffs' complaint pursuant to

Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

I.

When deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint, draw all inferences from the facts alleged in the light most favorable to the plaintiff, and "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. Planco Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008);  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007).  Our Court of Appeals has characterized the Supreme Court's "formulation of the pleading standard" for stating a claim as requiring "'a complaint with enough factual matter (taken as true) to suggest' the required element."  Phillips, 515 F.3d at 234 (citing Twombly, 127 S. Ct. at 1965).

The School District also moves under Rule 12(b)(1) to dismiss the parents' claims for lack of standing.  Ballentine v. U.S., 486 F.3d 806, 810 (3d Cir. 2007).  When considering such a motion, the trial court must accept as true all material allegations in the plaintiffs' complaint.  Warth v. Seldin, 442 U.S. 490, 501 (1975).

II.

According to the complaint, Annika, who is currently eleven years old, was identified by the School District as a

child with a specific learning disability.  She began the first grade in the School District in the 2004-2005 school year after attending kindergarten for two years.  During her first grade year, she experienced significant academic and emotional problems.  She read at 50% below her expected level and visited the nurse more than 86 times.  Due to these problems, the School District completed an Instructional Support Team ("IST") report on Annika on February 14, 2005.  During the first IST meeting, the school psychologist for the School District detailed some of Annika's problems, including her academic difficulties as well as her difficulties focusing on instruction, following directions and persevering with tasks.  IST was continued through the following school year because she continued visiting the nurse "in an attempt to evade work that was difficult for her," and continued performing below expected levels.  Compl. ¶ 17.  Annika required daily, one-on-one assistance.  Her second-grade teacher, who was concerned about Annika's academic abilities, conducted a variety of assessments, including the Test of Word Reading Efficiency.  This test showed that her word reading efficiency was below average and her sight word reading score was in the 8th percentile.  A Qualified Reading Inventory-3 test was also conducted, which demonstrated that Annika's frustrational level in reading was at a first to second grade level.

In the 2005-2006 school year, Annika was referred for a Multidisciplinary Evaluation.  According to this Evaluation, Annika had needs in basic reading skills, reading comprehension,

spelling, written expression, math computation, coping skills, independence, and task competition.  She was diagnosed with a "nonverbal" learning disability.  The school psychologist suggested that this disability was present at a very early age and in the first grade.

The Individualized Education Programs ("IEP") designed for Annika did not require "research-based" instruction in reading, writing and math and did not include psychological services or counseling.  Despite recognizing that Annika was restless, impulsive, gave up easily, had difficulty sustaining attention, needed frequent breaks, and engaged in avoidance behaviors, the IEPs provided no intervention in these areas and did not provide a behavior management plan based on a functional behavior assessment.

On December 5, 2007, the plaintiffs requested a special education due process hearing pursuant to 34 C.F.R. §§ 300.507(a) and 300.508 and 22 Pa. Code § 14.162.  The plaintiffs sought compensatory education for the period beginning April, 2005.  The due process hearing was held over several days on January 28, 2008, February 4, 2008 and April 23, 2008.  The decision of the hearing officer, David F. Bateman, Ph.D., was issued on June 14, 2008.

Dr. Bateman's decision addressed whether Annika was identified as a student with a disability in a timely fashion pursuant to the child find provision of the IDEA, 20 U.S.C.

§ 1412(a)(3).[1]  He also addressed whether the IEPs and program and services implemented for Annika were appropriate and whether compensatory education was a necessary, equitable remedy.

Dr. Bateman wrote in his decision that the School District "sought to work with Annika in regular education before using special education, and did so appropriately."  See Dr. Bateman's June 14, 2008 Decision, p. 9.  He noted that Annika's teachers reported she was making progress, had friends and was easy to work with in the first and second grade.  In light of these findings, Dr. Bateman concluded that there was "no evidence or testimony presented in this case indicating the District did not identify Annika in a timely fashion."  Id.  He further opined that the IEPs and program and services implemented by the School District for Annika were appropriate.  He reasoned that the IEPs were reasonably calculated to provide meaningful educational benefit, contained all legally required components, and were tied to Annika's weaknesses.

On July 28, 2008, the Special Education Due Process Appeals Review Panel for the Commonwealth of Pennsylvania affirmed Dr. Bateman's opinion.  The Panel ruled that the School District did not violate the child find clause of the IDEA, 42 U.S.C. § 1412(a)(3), in that it identified her as a student at

---

1. The child find provision of the IDEA requires the state to ensure that all children with disabilities are "identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services."  20 U.S.C. § 1412(a)(3); 34 C.F.R. § 300.101.

risk and placed her within the IST process.[2]  The Panel stated that the District had followed an instructional support approach for Annika with the goal of maximizing her individual success in the regular classroom while at the same time screening her as a student who may be in need of special education services.  A reading specialist delivered interventions, and these were followed to determine whether they were working.  During this time, Annika made progress in reading.  The Panel also concluded the IEPs developed for Annika provided the level of specificity required.  The Panel affirmed Dr. Bateman's application of the statute of limitations.

### III.

We begin with the School District's motion to dismiss Annika's parents' claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of standing.  In direct contravention of the recent decision by the United States Supreme Court in <u>Winkelman v. Panama City Sch. Dist.</u>, 550 U.S. 516, 127 S. Ct. 1994 (2007), the School District argues that John T. and Simone T. do not have standing to sue for violations of the IDEA because the statute only provides substantive rights to the child-student.  In <u>Winkelman</u>, the Supreme Court held that the IDEA "grants parents independent, enforceable rights," including the "entitlement to a free appropriate public education for the

---

2.  The plaintiffs contend that Annika should be have been identified in April, 2005 as a child with a disability in need of special education.  The School District identified her in March, 2006.

parents' child."  Id. at 2005.  The prior decision of the Court of Appeals in Collinsgru v. Palmyra Bd. of Educ., 161 F.3d 225 (3d Cir. 1998), on which the School District relies and which is to the contrary, is no longer the law in light of Winkelman. Parents are entitled to prosecute IDEA claims on their own behalf.  Thus, we will deny the School District's motion to dismiss the claims of John T. and Simone T. under the IDEA for lack of standing.

The School District also moves to dismiss the claims of John T. and Simone T. under § 504 of the Rehabilitation Act for lack of standing.  Section 504 provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

Section 504 is similar to the IDEA in that it provides a mechanism to redress the failure on the part of a state receiving federal funds to provide a free appropriate public education to children with disabilities.  While the IDEA imposes "an affirmative duty on states which accept certain federal funds to provide a FAPE for all their disabled children," § 504 imposes a "negative prohibition against disability discrimination in federally-funded programs."  Neena S. v. The Sch. Dist. of

Philadelphia, No. 05-5404, 2008 WL 5273546 *6 (E.D. Pa. Dec. 19, 2008).

In support of its motion to dismiss the parents' claims under § 504, the School District cites to pre-Winkelman cases, including Pettigrew v. Middletown Area Sch. Dist., No. 05-468, 2006 WL 4032181 (E.D. Pa. Sept. 26, 2006), M.M. v. Tredyffrin/Easttown Sch. Dist., No. 06-1966, 2006 WL 2561242 (E.D. Pa. Sept. 1, 2006), and Irene and Gary B. v. Philadelphia Academy Charter Sch., No. 02-1716, 2003 WL 24052009 (E.D. Pa. Jan. 29, 2003). Prior to the Supreme Court's decision in Winkelman, courts in this district typically reasoned that claims under § 504 are premised on alleged violations of the IDEA and, thus, parents lacking standing under the IDEA also lack standing under § 504. For example, in Irene and Gary B., the court explained:

> As plaintiffs' claims under § 1983 and the Rehabilitation Act are premised on alleged violations of the IDEA, if the parent plaintiffs lack standing under this statute as to their individual claims, the other claims are also deficient.

Id. at *5.

Now that Winkelman has held that parents have standing under the IDEA to enforce their independent right to a free appropriate education for their child, it would be incongruous to deny them standing under § 504 where their claims under that statute are premised on alleged violations of the IDEA. In Tereance D. v. Sch. Dist. of Philadelphia, 548 F. Supp. 2d 162

(E.D. Pa. 2008), the School District moved to dismiss the claims of the mother of a disabled child, which were brought in her own right under the IDEA, § 504, the ADA, and the Equal Protection Clause.  The court held that under the IDEA, the mother had a "personal right to enforce a FAPE as the parent of Tereance; therefore, she does not need to allege the type of personal violation suggested by the District."  Id. at 170.  The court also denied the motion of the School District to dismiss the claims of the mother in her own right, including her claim under § 504.  We too will deny the motion of the School District to dismiss the claims of Annika's parents for lack of standing under § 504 of the Rehabilitation Act.

The School District next maintains that Annika's parents are precluded from presenting their claims in this court because they have not exhausted their administrative remedies.  The School District is correct that plaintiffs must do so prior to filing suit in federal court.  Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994).  The IDEA contains a detailed procedural mechanism for resolving issues regarding the education of children with disabilities.  20 U.S.C. § 1415.  Parents are guaranteed the opportunity to present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of their child, or the provision of a FAPE to their child.  20 U.S.C. § 1415(b)(6).  Upon receipt of a complaint from a parent regarding their child's education, the local educational agency must convene a hearing

with the parents and the relevant members of the IEP team who have knowledge of the facts identified in the parents' complaint. 20 U.S.C. § 1415(f)(1)(B)(i).  After this meeting, an impartial due process hearing before the State educational agency or the local educational agency must be conducted.  20 U.S.C. § 1415(f)(1)(A).  If the due process hearing was held by a local educational agency, then any party aggrieved by the findings and decision may appeal to the State educational agency.  20 U.S.C. § 1415(g)(1).  Finally, an appeal to state court or federal district court is permissible but only after exhaustion of these administrative proceedings.  20 U.S.C. § 1415(i)(2)(A); 20 U.S.C. §1415(l).

Our Court of Appeals has explained that "exhaustion serves the purpose of developing the record for review on appeal, encourages parents and the local school district to work together to formulate an individualized plan for a child's education and allows the education agencies to apply their expertise and correct their own mistakes[.]"  Woodruff v. Hamilton Twp. Public Schools, No. 08-2439, 2009 WL 105750 (3d Cir. Jan. 15, 2009) (citations omitted).

These administrative remedies were exhausted by the plaintiffs.  Upon review of Dr. Bateman's decision and the opinion of the Special Education Due Process Appeals Review Panel, it is abundantly clear that a full factual record has been developed and all of the claims raised in the complaint in this matter were raised during the underlying administrative

proceedings.  Both Dr. Bateman and the Panel addressed the plaintiffs' claims regarding their child find claims, as well as their claims regarding the District's failure to provide Annika with a free, appropriate education.[3]  Furthermore, the claims for compensatory education were clearly considered and denied.

The School District specifically presses its exhaustion argument with respect to the plaintiffs claims for extended school year ("ESY") services.  The School District asserts this issue was not exhausted because it was neither identified as an issue by the hearing officer nor decided by the hearing officer.  The hearing officer addressed whether Annika was eligible for compensatory education due to the School District's alleged failure timely to identify her as a child with a disability.  He further considered whether the IEPs and programs implemented by the School District for Annika were appropriate.  See Dr. Bateman's June 14, 2008 Decision, p. 7.

We agree with the plaintiffs that their claim for ESY was subsumed within the issues addressed by the hearing officer.  The crux of the plaintiffs' argument is the failure of the School District timely to identify Annika as a student with a disability

---

3. Dr. Bateman concluded that there was no evidence or testimony that the School District did not identify Annika as a child in need of special education in a timely fashion.  He further concluded that the IEPs developed for Annika were reasonably calculated to confer a meaningful educational benefit. The Special Education Due Process Appeals Review Panel agreed with Dr. Bateman that the child find provisions of the IDEA were not violated with respect to Annika and that the IEPs developed for her were appropriate.

and to formulate IEPs that addressed Annika's needs.  The plaintiffs maintained that the IEPs failed "to provide for appropriate ESY despite Annika's continued disabilities."  See Pls.' Exceptions to the Hr'g Officer's Order, p. 15.  Dr. Bateman's conclusion that the IEPs developed for Annika were reasonably calculated to confer meaningful educational benefit necessarily includes his conclusion that ESY was not needed for Annika.  Accordingly, we will deny the School District's motion to dismiss this claim for failure to exhaust.

In addition to ESY, the School District highlights that plaintiffs have not exhausted their remedies with respect to their claim that exceptions to the IDEA's two year statute of limitations apply in this matter.  The plaintiffs submitted a 29-page brief to the hearing officer detailing their arguments with respect to the statute of limitations and application of exceptions to the statute of limitations.  Furthermore, the Appeals Review Panel specifically addressed the argument, stating:  "Moreover, published court decisions in this jurisdiction have rejected the Parents' claims for exceptions to this period."  See Special Education Op. No. 1903, p. 7.  We will deny the School District's motion to dismiss the plaintiffs' claims on this ground.

Finally, the School District asserts that monetary damages are not available under the IDEA for its alleged failure to provide Annika with a free appropriate public education.  The plaintiffs seek monetary relief for the School District's

violations of IDEA, § 504 of the Rehabilitation Act and the ADA. Our Court of Appeals has not yet resolved whether monetary damages are available for violations of the IDEA. Bucks County Dep't of Mental Health/Mental Retardation v. Commw. of Pennsylvania, 379 F.3d 61, 68 (3d Cir. 2004). However, the overwhelming majority of other Courts of Appeals, as well as judges within the Eastern District, have reasoned that such damages are not an "appropriate" remedy given that the purpose of the IDEA is to ensure that each child with a disability has available to them a free appropriate public education. 20 U.S.C. § 1400(d)(1)(A)-(B); Sellers v. Sch. Bd. of Manassas, 141 F.3d 524, 526-28 (4th Cir. 1998); Brandon v. Chichester Sch. Dist., No. 06-4687, 2007 WL 2155722 (E.D. Pa. July 25, 2007); Ronald E. v. Sch. Dist. Of Philadelphia Bd. of Educ., No. 05-2535, 2007 WL 4225584, *10 (E.D. Pa. Nov. 29, 2007) but see Damian J. v. The Sch. Dist. of Philadelphia, No. 06-3866 (E.D. Pa. Sept. 6, 2007). These courts have articulated their concern with awarding tort-like damages under a statute whose purpose is to ensure that children with disabilities receive the education to which they are entitled. Id. We agree with this reasoning. We are persuaded that "IDEA's primary purpose is to ensure FAPE, not to serve as a tort-like mechanism for compensating personal injury." Nieves-Marquez v. Commw. of Puerto Rico, 353 F.3d 108, 125 (1st Cir. 2003). Instead, plaintiffs may seek compensatory education and equitable relief, which may include reimbursement of costs incurred on private educational services rendered necessary by

the denial of a FAPE by the defendants.  <u>Id.</u> at 124.  We will grant the School District's motion to dismiss the plaintiffs' claims for monetary damages under the IDEA.

Finally, the School District also moves to dismiss all the remaining claims of plaintiffs for monetary damages.  Our Court of Appeals, however, has held that monetary damages are an available remedy under the Rehabilitation Act.  <u>W.B. v. Matula</u>, 67 F.3d 484, 494 (3d Cir. 1995), <u>abrogated in part by</u> <u>A.W. v. Jersey City Pub. Sch.</u>, 486 F.3d 791 (3d Cir. 2007); <u>A.W. v. Jersey City Pub. Sch.</u>, 486 F.3d 791 (3d Cir. 2007).  We will deny the School District's motion to dismiss the monetary damages claims with respect to § 504.  The plaintiffs have not responded to the School District's motion to dismiss their claims for monetary damages under the ADA.  Thus, we will grant this portion of the motion as unopposed.

```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANNIKA T, a minor, by and        :    CIVIL ACTION
through her parents,             :
JOHN T. and SIMONE T., et al.    :
                                 :
           v.                    :
                                 :
UNIONVILLE CHADDS-FORD           :
SCHOOL DISTRICT                  :    NO. 08-4944
```

ORDER

      AND NOW, this 24th day of March, 2009, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

      (1)   the motion of the Unionville Chadds-Ford School District to dismiss the plaintiffs' claims for monetary damages under the Individuals with Disabilities Education Act, 42 U.S.C. § 1401 et seq., and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, is GRANTED; and

      (2)   the motion of the Unionville Chadds-Ford School District to dismiss is otherwise DENIED.

                                    BY THE COURT:

                                    /s/ Harvey Bartle III
                                                          C.J.